IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID HABIG,

    Plaintiff,

vs.

W. MCALLISTER, et al.,

    Defendants.

No. CIV S-10-2022 EFB P

ORDER AND
FINDINGS AND RECOMMENDATIONS

___

Plaintiff is a prisoner proceed without counsel in civil rights action brought under 42 U.S.C. § 1983. Defendants Bick, Andreason, Sinkovich, Weber and Dickinson have filed a motion to dismiss on the grounds that the complaint fails to state a claim upon which relief can be granted. Dckt. No. 13. For the reasons explained below, defendants' motion should be denied.

**I.    Factual Allegations**

Plaintiff alleges that on June 13, 2008, he suffered a fracture of the head of the fifth metacarpal on his right hand. Dckt. No. 1 at 4-5. He was in extreme pain and could not move his hand, extend his fingers or rotate his wrist. *Id.* at 5, 9. Staff took him to the emergency care clinic. *Id.* The examining medical professionals, D. Sinclair, R.N. and Dr. M. Sabin, diagnosed a "possible" fracture. *Id.* at 5, 10. The only treatment plaintiff received at that time was an ace

1

bandage. *Id.* at 11.

Plaintiff began experiencing "a tremendous amount of pain and discomfort." *Id.* at 11. He could not eat because of the pain, and as he is a diabetic, his blood sugar level was very high. *Id.* Two days after Sabin examined plaintiff, psych tech Gallardo saw him and observed that he was in extreme pain, refusing to eat, lethargic and incoherent. *Id.* at 12. After Gallardo recommended that plaintiff be seen by a doctor immediately, Sabin saw plaintiff again and ordered x-rays of plaintiff's hand. *Id.* at 12-13. The x-rays confirmed that plaintiff had a boxer fracture, but plaintiff was again only prescribed an ace bandage. *Id.* at 13.

On June 18, five days after plaintiff was injured, his pain became unbearable and prevented him from eating or sleeping, and he was readmitted to the emergency care clinic. *Id.* at 14. He requested stronger pain medication and an appointment with a specialist. *Id.* He was seen by Nurse Kinder and Dr. Kotarek, and was prescribed tylenol with codeine, ice packs and an ace bandage. *Id.* at 15. His hand was not immobilized. *Id.*

On June 18, Kotarek submitted a request for authorization for plaintiff to be examined by an off-site orthopedic specialist, stating that surgery was necessary to repair the fracture. *Id.* Senior medical administrative staff, including Dr. Bick and Dr. Andreason, did not approve the request until July 22, 2008. *Id.* at 16. Bick, the Chief Deputy Health Care Manager at CMF, is authorized to review and approve requests, but "refused to authorize immediate medical care and/or surgery to repair his fractured hand after being presented with evidence of plaintiff's injury including the diagnosis, x-rays and physician request for medical services." *Id.* In late August, 2008, Bick also denied plaintiff's internal appeal requesting proper medical care at the second level of review. *Id.* at 17. Plaintiff alleges that Andreason, the Chief Medical Officer for inpatient services at CMF, "was presented with knowledge of plaintiff's injury" and "was in a position . . . to approve the referral for surgery . . . but failed to do so." *Id.* Andreason also denied plaintiff's internal appeal at the first and second level of review. *Id.* at 17-18. In addition, after plaintiff filed an internal appeal on August 14, 2008, stating that he needed

immediate and adequate medical care to repair his hand, Bick and Andreason, as part of the Medical Authorization Review committee, granted plaintiff an examination by an orthopedic surgeon at an off-site medical facility. *Id.* at 22, 23.

Plaintiff contends that Nurse Weber reviewed his internal appeal at the first level. *Id.* She had access to his medical file, and had the knowledge and was in the position to approve immediate medical care but failed to do so. *Id.*

Sinkovich reviewed plaintiff's appeal at the second level of review. *Id.* at 24. She had documentation of plaintiff's injury in his medical file and was in a position to correct the injury but did not. *Id.*

Dickinson, the CMF Warden, had the "ultimate authority to approve physician requests for medical services or inmate 602 appeals." *Id.* Plaintiff claims that Dickinson "was informed or should have been informed" of plaintiff's need for medical treatment. *Id.* at 25. He then alleges that she "had knowledge of plaintiff's injury and was in a position to correct the injury . . . but refused to do so." *Id.*

Plaintiff was eventually seen by an outside specialist, Shiflett, on October 10, 2008. *Id.* at 22. Shiflett's opinion was that too much time had passed to surgically repair the fracture. *Id.* at 23.

Plaintiff makes additional allegations against defendants who do not join in this motion to dismiss.

**II.    Legal Standards**

In order to survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

3

The complaint's factual allegations are accepted as true. *Church of Scientology of Cal. v. Flynn*, 744 F.2d 694, 696 (9th Cir. 1984). The court construes the pleading in the light most favorable to plaintiff and resolves all doubts in plaintiff's favor. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

Pro se pleadings are held to a less stringent standard than those drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Unless it is clear that no amendment can cure its defects, a pro se litigant is entitled to notice and an opportunity to amend the complaint before dismissal. *Lopez v. Smith*, 203 F.3d 1122, 1127-28 (9th Cir. 2000) (en banc); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987).

To state a section 1983 claim for violation of the Eighth Amendment based on inadequate medical care, plaintiff must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). To prevail, plaintiff must show both that his medical needs were objectively serious, and that the defendant possessed a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 297–99 (1991); *McKinney v. Anderson*, 959 F.2d 853, 854 (9th Cir. 1992).

A serious medical need is one that significantly affects an individual's daily activities, an injury or condition a reasonable doctor or patient would find worthy of comment or treatment, or the existence of chronic and substantial pain. *See*, *e.g.*, *McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), overruled on other grounds by *WMX Techs. v. Miller*, 104 F.2d 1133, 1136 (9th Cir.1997) (en banc).

To act with deliberate indifference, a prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Thus, a defendant is liable if he knows that plaintiff faces "a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Id.* at 847. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842.

**III.   Analysis**

    **A.   Bick and Andreason**

As explained above, plaintiff alleges that defendants Bick, the Chief Deputy Health Care Manager at CMF, and Andreason, the Chief Medical Officer / Health Care Services Manager at CMF, refused to timely approve Dr. Kotarek's request for authorization for plaintiff to be examined by an off-site orthopedic specialist, which was submitted on June 18 but was not approved until July 22. Dckt. No. 1 at 16. Plaintiff also alleges that Bick and Andreason denied plaintiff's internal appeal for proper medical care at the second level of review in August 2008, and that they are liable through a theory of supervisory liability. Dckt. No. 1 at 17, Dckt. No. 17 at 4.

As to defendant Bick, defendants argue that "plaintiff's claim about a referral is contradicted by the record attached to the complaint" as the request for orthopedic consultation was approved on July 22. Dckt. No. 13-1 at 5 (citing Ex. D to plaintiff's complaint). But it is unclear how this exhibit contradicts plaintiff's allegations that Bick delayed in authorizing medical treatment, and defendants do not elaborate on this argument. Defendants argue that "plaintiff's claim against Dr. Andreason should be dismissed for the same reasons that his claim against Dr. Bick should be dismissed." Dckt. No. 18 at 3.

Plaintiff alleges that the request was made on June 18, but Bick and Andreason refused to approve it until July 22. Viewing the factual allegations in the light most favorable to plaintiff, he alleges that defendants Bick and Andreason were aware on June 18 that plaintiff was in need of immediate medical attention, and at risk for further pain and deformity, but disregarded that harm by failing to approve the authorization for over a month. Obviously, Bick and Andreason dispute this. However, plaintiff's factual allegations regarding the delay in authorizing medical treatment are sufficient to support a cause of action against Bick and Andreason. Because defendants' motion to dismiss must be denied as to these defendants, the court does not address the parties' remaining arguments regarding different theories of liability against these

1 defendants.

**B.     Sinkovich**

Plaintiff claims that Sinkovich, an appeals coordinator, reviewed and denied his internal appeal at the second level of review on October 25, 2008. Dckt. No. 1 at 24. She allegedly had documentation of plaintiff's injury, including physicians' requests for services, in plaintiff's medical file and was in a position to correct the injury but did not. *Id.* Plaintiff alleges that Sinkovich "arbitrarily decided that plaintiff's injury was not significant or serious enough to warrant proper medical care and surgery to ease his pain and suffering, even after several CDCR clinicians requested orthopedic services." *Id.*

Defendants argue that Sinkovich is not a medical staff member, and therefore was not authorized to diagnose or provide medical care. Dckt. No. 13-1 at 7. Defendants note that Dr. Shiflett told plaintiff that surgical repair was not possible on October 10, 2008, and that Dr. Birbeck subsequently ruled out surgery on November 21, 2008. *Id.* Defendants note that plaintiff has no federal constitutional right to a properly functioning inmate grievance system. Dckt. No. 18 at 4.

Plaintiff argues in rebuttal that Sinkovich assigns inmate appeals to staff members, and that she assigned herself to plaintiff's appeal. Dckt. No. 17 at 8. Thus, he argues, even if Sinkovich had no authority to grant plaintiff's appeal because she is not a medical staff member, she should have assigned it to a medical staff member. *Id.* at 8-9. Moreover, if Sinkovich had no authority to approve his appeal and grant him medical treatment, "the defendants admit to engaging in a policy to purposely deny or delay proper medical treatment." Dckt. No. 17 at 8.

The prison grievance procedure does not confer any substantive rights upon inmates and actions in reviewing and denying inmate appeals cannot serve as a basis for liability under section 1983. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Therefore, to establish liability for defendants involved in the denial of his grievances, plaintiff must allege that his appeal put the defendants on notice that he has a

serious medical need that was not being met, and that their denial therefore constituted deliberate indifference to his medical need.

Defendants argue that because Sinkovich is a non-medical staff member, she cannot be held liable for denying a medical appeal where a doctor had already opined that treatment was not an option. Dckt. No. 13-1 at 7. Defendants cite no authority to support this proposition. Nor do they support this argument with exhibits showing that Sinkovich relied on Shiftlett's opinion in denying plaintiff's appeal. Instead, defendants point to two paragraphs in plaintiff's complaint that state that Dr. Shiflett opined on October 10, 2008 that too much time had passed since his injury to surgically repair plaintiff's injury, but referred plaintiff to Dr. Birbeck. Dckt. No. 1 at 22-23. Plaintiff's complaint states that Sinkovich denied plaintiff's appeal on October 25, 2008. *Id.* at 23. The complaint does not state that Sinkovich relied upon or knew of Shiflett's opinion at that time. However, plaintiff does allege that Sinkovich "knew of plaintiff's injury per documentation contained in his medical file, x-rays confirming the injury and previous physician requests for services." *Id.* at 24.

It is unclear what evidence was before Sinkovich at the time that she denied plaintiff's appeal. Neither party has attached the relevant documents. Plaintiff attaches some documents to his complaint, but none of the documents appear to be Sinkovich's denial of his appeal, or show what documents were before Sinkovich at the time she assigned plaintiff's appeal to herself or at the time that she denied plaintiff's appeal. *See* Dckt. No. 1 at 31-36. Plaintiff has alleged that Sinkovich saw physicians' requests for services in his file, yet chose to deny his appeal anyway. Plaintiff does not allege that Sinkovich relied on Shiflett's opinion that surgery was not necessary. It is not clear whether Sinkovich was aware of Shiflett's opinion at the time she denied plaintiff's appeal.

Construing the pleading in the light most favorable to plaintiff, Sinkovich reviewed doctors' opinions stating that plaintiff needed medical treatment; chose to assign the appeal to herself rather than to a medical staff member; and denied plaintiff's appeal despite her awareness

that plaintiff was in need of medical treatment.  These allegations are sufficient to withstand this motion to dismiss.

**C.     Weber**

Plaintiff alleges that Nurse Weber denied his appeal at the first level of review.  Dckt. No. 1 at 23.  He alleges that "he informed J. Weber, R.N., of his need for immediate and adequate medical services to repair his fractured hand.  J. Weber had access to plaintiff's medical file with documentation and x-rays of his injury."  *Id.*

Defendants argue that plaintiff fails to allege when and why Weber denied his appeal.  Dckt. No. 13-1 at 7-8.  In their reply brief, defendants argue that plaintiff waited two months after his injury to file an internal appeal, and therefore that Weber's denial of the appeal for "immediate" medical care does not support a deliberate indifference claim.  Dckt. No. 18 at 4-5.

Whether plaintiff was in need of immediate medical care at the time that Weber processed his appeal even though two months had passed since his injury, and whether Weber knew of and disregarded this need, are issues of fact that are not properly decided at this stage in the proceedings.  The motion to dismiss should be denied as to Weber.

**D.     Dickinson**

Plaintiff claims that Dickinson, the warden of CMF, is the "ultimate authority to approve physician requests for medical services or inmate 602 appeals for immediate care or treatment."  Dckt. No. 1 at 24.  He argues that the California Code of Regulations provides that when medically necessary services are not available for an inmate within a facility, the facility's chief medical officer may request the institutional head's approval to temporarily place the inmate in a community medical facility.  *Id.* at 25.  He claims Dickinson "was informed or should have been informed of plaintiff's immediate need for surgery" and that she "had the knowledge of plaintiff's injury and was in a position to correct the injury" but refused to do so.  *Id.*

To show a prima facie case of supervisory liability, plaintiff must allege facts indicating that supervisory defendants either: personally participated in the alleged deprivation of

8

constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented "a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (quoting *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987)); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Defendants argue that through the "should have been informed" language, plaintiff concedes that Dickinson may not have been personally aware of his alleged need for surgery. Dckt. No. 13-1 at 8. Therefore, defendant argues, plaintiff has not alleged facts sufficient to support his claim that Dickinson was personally involved in denying him medical care. If it is true that Dickinson was not informed of plaintiff's particular need for medical care, she cannot be held liable for her personal involvement in specifically denying plaintiff medical care.

However, in his opposition to defendants' motion, plaintiff does not argue that Dickinson had personal knowledge of his particular need for medical care. Instead, he argues that Dickinson knew that CMF medical staff have a history of "taking actions that violate 'official' medical policy" and that Dickinson condoned her subordinates' actions of delaying and denying medical treatment when off-site treatment was necessary. Dckt. No. 17 at 11-12. He claims that Dickinson "initiat[ed] policy" at CMF. *Id.* at 11.

It is important to note that this a Rule 12 motion and not a motion for summary judgment. Plaintiff's factual allegations must be taken as true and construed in the light most favorable to plaintiff. Assuming plaintiff's allegations as true, and taking them in the most light most favorable to plaintiff, he has alleged facts sufficient to support a supervisory liability claim against Dickinson. Plaintiff has alleged that Dickinson initiated or condoned an informal policy of denying or delaying medical treatment to inmates in cases where off-site treatment was necessary. If these allegations are true, they are sufficient to support a claim of deliberate indifference against Dickinson.

////

**III.    Conclusion**

Accordingly, it is ORDERED that the Clerk shall randomly assign a United States District Judge to this case.

Further, it is RECOMMENDED that defendants' motion to be dismiss be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED:  September 1, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE